1   WILLIAM BLUMENTHAL
    General Counsel
2
    RAYMOND E. MCKOWN, Bar # 150975
3   Federal Trade Commission
    10877 Wilshire Blvd., Ste. 700
4   Los Angeles, CA  90024                        JS 6
    (310) 824-4343 (voice)
5   (310) 824-4380 (fax)
    rmckown@ftc.gov
6
    Attorney for Plaintiff FTC
7
8                   UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
9   ─────────────────────────────
                                    )
10  FEDERAL TRADE COMMISSION        )
                                    )
11              Plaintiff,          )
                                    )
12              v.                  )
                                    ) CV.  **CV08-07655 DSF (PJWx)**
13  ULTRALIFE FITNESS, INC., dba Pure)
    Health Laboratories, Pure Health )  **FINAL JUDGMENT AND ORDER FOR**
14  Labs, and UltraBurn PM; and TRU  )  **PERMANENT INJUNCTION AND OTHER**
    GENIX LABORATORIES, LLC, dba     )  **EQUITABLE RELIEF**
15  eFitness Clubhouse and eCurves   )
    Clubhouse;                       )
16                                   )
    NEIL P. WARDLE; CHRISTOPHER J.   )
17  WARDLE; and PACE MANNION;        )
                                     )
18              Defendants.          )
    ─────────────────────────────   )
19
20
21
22
23
24
25
26
27
28

1    The parties, Plaintiff Federal Trade Commission and Defendants

2  Ultralife Fitness, Inc., dba Pure Health Labs, and UltraBurn PM;

3  Tru Genix Laboratories, LLC, dba eFitness Clubhouse and eCurves

4  Clubhouse; Neil P. Wardle; Christopher J. Wardle; and Pace Mannion;

5  having agreed in the Stipulated Final Judgment and Order for

6  Permanent Injunction and Other Equitable Relief to entry of this

7  Order, hereby request that the Court enter the same to resolve all

8  matters in dispute in this action.  Defendants have waived service

9  of the Summons and Complaint.

10                              **FINDINGS**

11    1.   This Court has jurisdiction over the subject matter of

12  this action and all parties hereto.  Venue in the Central District

13  of California is proper.

14    2.   The activities of Defendants are in or affecting commerce,

15  as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

16    3.   The Complaint states a claim upon which relief may be

17  granted against Defendants under Sections 5(a), 12, and 13(b) of

18  the FTC Act, 15 U.S.C. §§ 45(a), 52, and 53(b), and Section 907(a)

19  of the Electronic Fund Transfer Act, 15 U.S.C. § 1693e(a), and

20  Section 205.10(b) of Regulation E, 12 C.F.R. Section 205.10(b).

21    4.   Defendants waive: (a) all rights to seek review or

22  otherwise challenge or contest the validity of this Order; (b) any

23  claim Defendants may have against the Commission, its employees,

24  representatives, or agents; (c) all claims under the Equal Access

25  to Justice Act, 28 U.S.C. § 2412, as amended by Pub. L. 104-121,

26  110 Stat. 847, 863-64, and (d) any rights to attorneys' fees that

27  may arise under said provision of law.

28

6.   The FTC and Defendants stipulate and agree to this Order, without trial or adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the Complaint to the date of entry of this Order.   Defendants do not admit any of the allegations set forth in the Complaint, other than jurisdictional facts.

7.   Entry of this Order is in the public interest.

## DEFINITIONS

For purposes of this Order, the following definitions shall apply:

1.   "Billing Information" means any data that enables any person to access a consumer's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

2.   "Clearly and Conspicuously" means:

a.   in print communications, the message shall be in a type size and location sufficiently noticeable for an ordinary consumer to read and comprehend it, in print that contrasts with the background against which it appears;

b.   in communications disseminated orally, the message shall be delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend it;

c.   in communications made through an electronic medium (such as television, video, radio, and interactive media such as the Internet, online services and software), the message shall be presented simultaneously in both the audio and visual portions of the communication.   In any communication presented solely through visual or audio means, the message may be made through the same

means in which the communication is presented.  In any
communication disseminated by means of an interactive electronic
medium such as software, the Internet, or online services, a
disclosure must be unavoidable and presented prior to the consumer
incurring any financial obligation.  Any audio message shall be
delivered in a volume and cadence sufficient for an ordinary
consumer to hear and comprehend it.  Any visual message shall be of
a size and shade, with a degree of contrast to the background
against which it appears and shall appear on the screen for a
duration and in a location, sufficiently noticeable for an ordinary
consumer to read and comprehend it; and

       d.  regardless of the medium used to disseminate it, the
message shall be in understandable language and syntax.  Nothing
contrary to, inconsistent with, or in mitigation of the message
shall be used in any communication.

    3.  "Competent and Reliable Scientific Evidence" means tests,
analyses, research, studies, or other evidence based on the
expertise of professionals in the relevant area, that have been
conducted and evaluated in an objective manner by persons qualified
to do so, using procedures generally accepted in the profession to
yield accurate and reliable results.

    4.  "Defendants" means Ultralife Fitness, Inc., dba Pure
Health Laboratories, Pure Health Labs, and UltraBurn PM; Tru Genix
Laboratories, LLC, dba eFitness Clubhouse and eCurves Clubhouse;
Neil P. Wardle; Christopher J. Wardle; and Pace Mannion.

    5.  "Business Entity Defendants" means Ultralife Fitness,
Inc., dba Pure Health Laboratories, Pure Health Labs, and UltraBurn

PM; and Tru Genix Laboratories, LLC, dba eFitness Clubhouse and eCurves Clubhouse.

6.    "Individual Defendants" means Neil P. Wardle, Christopher J. Wardle, and Pace Mannion.

7.    "Endorsement" means any advertising message (including verbal statements, demonstrations, or depictions of the name, signature, likeness or other identifying personal characteristics of an individual or the name or seal of an organization) which message consumers are likely to believe reflects the opinions, beliefs, findings, or experience of a party other than the sponsoring advertiser.  The party whose opinions, beliefs, findings, or experience the message appears to reflect will be called the endorser and may be an individual, group or institution.

8.    "Food" means:

       a.    articles used for food or drink for man or other animals;

       b.    chewing gum; and

       c.    articles used for components of any such article.

9.    "Drug" means:

       a.    articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them;

       b.    articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals;

       c.    articles (other than food) intended to affect the structure or any function of the body of man or other animals; and

1    d.    articles intended for use as a component of any
2    article specified in clause (a), (b), or (c); but does not include
3    devices or their components, parts, or accessories.

4    10.   "Device" means an instrument, apparatus, implement,
5    machine, contrivance, implant, in vitro reagent, or other similar
6    or related article, including any component, part, or accessory,
7    which is:

8    a.    recognized in the official National Formulary, or
9    the United States Pharmacopeia, or any supplement to them;

10    b.    intended for use in the diagnosis of disease or
11   other conditions, or in the cure, mitigation, treatment, or
12   prevention of disease, in man or other animals, or

13    c.    intended to affect the structure or any function of
14   the body of man or other animals, and which does not achieve any of
15   its principal intended purposes through chemical action within or
16   on the body of man or other animals and which is not dependent upon
17   being metabolized for the achievement of any of its principal
18   intended purposes.

19   11.   "Negative Option Feature" means, in an offer or
20   agreement to sell or provide any product or service, a provision
21   under which the consumer's silence or failure to take an
22   affirmative action to reject products or services or to cancel the
23   agreement is interpreted by the seller or provider as acceptance of
24   the offer.  Agreements with Negative Option Features include, but
25   are not limited to: (i) free or introductory price trial offers in
26   which the consumer receives a product or service for free or at a
27   nominal or introductory price for an initial period and will incur
28   an obligation to pay or pay a greater amount for the product or

service if he or she does not take affirmative action to cancel, reject, or return the product or service before the end of that period; (ii) continuity plans in which, subsequent to the consumer's agreement to the plan, the seller or provider automatically ships products to a consumer unless the consumer notifies the seller or provider within a certain time not to ship the products; and (iii) automatic renewal plans in which the seller or provider automatically renews the agreement and charges the consumer unless the consumer cancels before the renewal.

12. "Preauthorized Electronic Fund Transfer" as defined by the Electronic Fund Transfer Act, 15 U.S.C. § 1693a(9), means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

## I.  PROHIBITION ON MISREPRESENTATIONS

**IT IS THEREFORE ORDERED** that Defendants and Defendants' successors, assigns, officers, agents, servants, salespersons, employees, independent contractors, attorneys, and those persons in active concert or participation with them, whether acting directly or through any sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, or other entity, who receive actual notice of this Order by personal service or otherwise, in connection with the advertising, promoting, offering for sale, or sale of any dietary supplement, food, drug, device, or health-related program or service, or of any product or service by means of a negative option feature, are hereby permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication, any material fact, including but not limited to:

1     A.  That a product or service is offered on a "free," "risk-

2  free," "trial," or "no obligation" basis, or words of similar

3  import, denoting or implying the absence of any obligation on the

4  part of the recipient of the offer to affirmatively act in order to

5  avoid charges;

6     B.  The amount that a consumer will be charged or billed;

7     C.  That a consumer will not be charged or billed;

8     D.  The timing or manner of any charge or bill (including but

9  not limited to the date of the charge and whether it will be a

10  credit card charge or a checking account debit);

11     E.  The length of any trial period that consumers receive

12  before being charged or billed;

13     F.  Through, among other things, mailings, email, billings,

14  credit card charges and checking account debits, that a consumer

15  purchased or agreed to purchase a product or service, or that a

16  transaction has been authorized by a consumer;

17     G.  That use of a product burns a significant amount of fat

18  while the user sleeps;

19     H.  That use of a product can cause substantial weight loss

20  with no additional effort required;

21     I.  That use of a product can cause weight loss of two pounds

22  or more a week for a month or more without diet or exercise; and

23     J.  That use of a product can safely enable consumers to lose

24  more than three pounds per week for more than four weeks.

25               **II.   REQUIRED DISCLOSURES**

26     **IT IS FURTHER ORDERED** that Defendants and Defendants'

27  successors, assigns, officers, agents, servants, salespersons,

28  employees, independent contractors, attorneys, and those persons in

active concert or participation with them, whether acting directly
or through any sole proprietorship, partnership, limited liability
company, corporation, subsidiary, branch, division, or other
entity, who receive actual notice of this Order by personal service
or otherwise, in connection with the advertising, promoting,
offering for sale, or sale of any product or service, are hereby
permanently restrained and enjoined from failing to clearly and
conspicuously disclose, before consumers are asked to pay money,
submit consideration, or reveal billing information: all fees and
costs; all material restrictions, limitations, or conditions
applicable to the purchase, receipt, or use of the product or
service that is the subject of the offer (including any promotion
associated with free products or services, or products or services
available on a trial basis); and all material terms and conditions
of any offer with a negative option feature, including but not
limited to:

    A.  The dollar amount of the first payment and when it will be
charged, withdrawn, or become due; the dates or frequency (*e.g.*,
monthly, quarterly) of all subsequent charges or payment(s); and
the dollar amount or range of costs of all subsequent charges or
payments;

    B.  If a withdrawal will be made or a charge assessed at the
end of a trial period unless the consumer cancels: this fact; when
the trial period begins; the length of the trial period; the
specific steps and means by which a cancellation request must be
submitted; and the date by or time period within which a
cancellation request must be received to avoid a charge;

C.   If products are automatically shipped to a consumer or a membership, subscription, or agreement for products or services that are offered on a periodic basis is automatically renewed unless the consumer provides notification within a certain time not to ship or renew: this fact; the length of the subsequent renewal period; the manner in which a notice not to ship or renew must be submitted; the date by or time period within which a notice not to ship or renew must be received to avoid shipment or renewal (*e.g.,* two weeks after the consumer is advised of an upcoming shipment); and the telephone number, email address, or street address to which such a notice must be directed;

D.   The fact, if true, that the billing information Defendants already possess, either because the consumer previously provided it to a Defendant, or a Defendant obtained it from another source, will be used to bill or charge the consumer; and

E.   All material conditions, limitations and restrictions on the ability of the consumer to use any product or service that is offered "free," "risk-free," on a "trial," "discounted," "reduced in price," or "no obligation" basis, or words of similar import denoting or implying the absence of any obligation on the part of the recipient of such offer to pay or pay a greater amount for such product or service or to take affirmative action to avoid incurring payment or increased payment obligations, whether such product or service is the subject of the offer to the consumer or such product or service is offered to a consumer who accepts an offer for other products or services.

**III.   PROHIBITIONS RELATING TO THE USE OF BILLING INFORMATION**

**IT IS FURTHER ORDERED** that Defendants and Defendants'
successors, assigns, officers, agents, servants, salespersons,
employees, independent contractors, attorneys, and those persons in
active concert or participation with them, whether acting directly
or through any sole proprietorship, partnership, limited liability
company, corporation, subsidiary, branch, division, or other
entity, who receive actual notice of this Order by personal service
or otherwise, in connection with the advertising, promoting,
offering for sale, or sale of any product or service, are hereby
permanently restrained and enjoined from directly or indirectly
using billing information to obtain payment without first obtaining
the express informed consent of the consumer, which shall include
express informed consent to be charged for the product or service
using a specified billing account, and the clear and conspicuous
disclosure of the information identified in Section II, above, in
close proximity to the consumer's express consent to purchase such
products or services.   In connection with an offer or agreement
with a negative option feature, the following requirements must be
met to evidence express informed consent:

A.   One of the following means must be used to evidence that
the consumer has given express informed consent:

1.   Obtaining the consumer's express written
authorization to purchase the product or service that is the
subject of the transaction and the consumer's authorization to
assess a charge against a specified account for payment.   Such
authorization must include the consumer's signature (the term
"signature" includes a verifiable electronic or digital form of

1  signature, to the extent such form of signature is recognized as a

2  valid signature under applicable federal law or state contract

3  law); or

4          2.   Obtaining the consumer's express oral authorization

5  to purchase the product or service that is the subject of the

6  transaction and the consumer's authorization to assess a charge

7  against a specified account for payment that is audio-recorded, as

8  follows:

9              a.   the recording must evidence that the consumer,

10  during that transaction, at a minimum, has provided the last four

11  (4) digits of the account number to be charged;

12             b.   the recording must evidence that the disclosure

13  requirements of Section II, above, have been complied with;

14             c.   the recording must include the entirety of the

15  transaction;

16             d.   the recording can be identified and located by

17  either the consumer's name or telephone number; and

18             e.   a copy of the recording is provided upon request

19  to the consumer, the consumer's bank, credit or debit card company

20  or other billing entity, state attorney general or consumer

21  protection agency, and the Commission; or

22     B.   For any transaction involving a service, within the lesser

23  of ten days after the date of the transaction or half the time of

24  any trial period, the consumer must be sent written confirmation of

25  the transaction, identified in a clear and conspicuous manner on

26  the outside of the envelope, via first class mail that includes all

27  the information that is required to be disclosed pursuant to

28  Section II, above;

C.  For any transaction involving a product, the first product shipment must contain written confirmation of the transaction that includes all of the information that is required to be disclosed pursuant to Section II, above, and a clear and conspicuous statement of the procedures by which the consumer can cancel or obtain a refund; and

D.  At least thirty (30) days prior to renewing a consumer's membership, subscription, or agreement to purchase for any service (in the case of a membership, subscription, or agreement whose term is six months or longer) and prior to the submission for payment of a consumer's billing information for such services, a consumer must be sent written confirmation of such renewal, identified in a clear and conspicuous manner on the outside of the envelope, via first class mail, that includes all of the information that is required to be disclosed pursuant to Subsections II.A, B, and D of this Order, above, and a clear and conspicuous statement of the procedures by which the consumer can cancel such renewal.

**IV.  MONITORING TO ENSURE COMPLIANCE WITH THE ORDER**

**IT IS FURTHER ORDERED** that Defendants and Defendants' successors, assigns, officers, agents, servants, salespersons, employees, independent contractors, attorneys, and those persons in active concert or participation with them, whether acting directly or through any sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, or other entity, who receive actual notice of this Order by personal service or otherwise, in connection with the advertising, promoting, offering for sale, or sale of any product or service, are hereby permanently restrained and enjoined from failing to take reasonable

steps sufficient to monitor and ensure that all Defendants' agents,
representatives, employees, independent contractors, and contract
telemarketers comply with the requirements of Sections I-III
and V-IX.  Such reasonable steps shall include but are not limited
to the following:

A.  Establishing and following a procedure for receiving and
responding to consumer complaints that allege conduct that
constitutes a violation of the FTC Act or this Order;

B.  Ascertaining the number and nature of consumer complaints
in which each employee or independent contractor is involved;

C.  Promptly and fully investigating any consumer complaint;
and

D.  Creating and retaining records demonstrating compliance
with this Section, as required by Section XV, including but not
limited to, copies of all procedures for receiving and responding
to consumer complaints, all documents relating to investigations of
consumer complaints, and all documents demonstrating how Defendants
responded to or addressed each consumer complaint;

Provided however, that this subsection does not authorize or
require Defendants to take any action that violates any federal,
state, or local law.

**V.   PROHIBITIONS RELATING TO REFUNDS AND CANCELLATIONS**

**IT IS THEREFORE ORDERED** that Defendants and Defendants'
successors, assigns, officers, agents, servants, salespersons,
employees, independent contractors, attorneys, and those persons in
active concert or participation with them, whether acting directly
or through any sole proprietorship, partnership, limited liability
company, corporation, subsidiary, branch, division, or other

1   entity, who receive actual notice of this Order by personal service

2   or otherwise, in connection with the advertising, promoting,

3   offering for sale, or sale of any product or service, are hereby

4   permanently restrained and enjoined:

5       A.  From failing to disclose, clearly and conspicuously,

6   before consumers are asked to pay money, submit consideration, or

7   reveal billing information: (1) if a representation is made about a

8   refund or cancellation policy, all material terms and conditions of

9   such policy; or (2) if there is a policy of not making refunds or

10   cancellations; this fact;

11       B.  If a policy allowing consumers to cancel or obtain a

12   refund has been disclosed to the consumer, from failing to honor

13   any request that complies with such policy; provided however, with

14   respect to any money-back guarantee offered by Defendants, from

15   failing to provide, within seven (7) business days of a Defendant's

16   receipt of a valid refund request, a full refund of the purchase

17   price of the product or service; and

18       C.  From misrepresenting, or assisting others in

19   misrepresenting, expressly or by implication, the terms and

20   conditions of any refund or cancellation policy or policies,

21   including but not limited to, that consumers who accept an offer

22   can easily cancel to avoid the assessment of a charge.

23       **VI.  COMPLIANCE WITH THE ELECTRONIC FUND TRANSFER ACT**

24       **IT IS FURTHER ORDERED** that Defendants and Defendants'

25   successors, assigns, officers, agents, servants, salespersons,

26   employees, independent contractors, attorneys, and those persons in

27   active concert or participation with them, whether acting directly

28   or through any sole proprietorship, partnership, limited liability

company, corporation, subsidiary, branch, division, or other
entity, who receive actual notice of this Order by personal service
or otherwise, in connection with the advertising, promoting,
offering for sale, or sale of any product or service, are hereby
permanently restrained and enjoined, in connection with any
consumer who purchases any product or service subsequent to the
date of this Order and who uses a debit card or other means of
electronic funds transfer, from:

A.  Failing to obtain written authorization for preauthorized
electronic fund transfers from a consumer's account before
initiating any preauthorized electronic fund transfer, as required
by Section 907(a) of the Electronic Funds Transfer Act, 15 U.S.C.
§ 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R.
§ 205.10(b), as more fully set out in Section 205.10(b) of the
Federal Reserve Board's Official Staff Commentary to Regulation E,
12 C.F.R. § 205.10(b) Supp. I, or as it may hereafter be amended;
and

B.  Failing to maintain procedures reasonably adapted to avoid
an unintentional failure to obtain written authorization for a
preauthorized electronic fund transfer, as set out in Section
205.10(b) of the Federal Reserve Board's Official Staff Commentary
to Regulation E, 12 C.F.R. § 205.10(b) Supp. I, or as it may
hereafter be amended.

### VII.  FALSE WEIGHT-LOSS REPRESENTATIONS PROHIBITED

**IT IS FURTHER ORDERED** that Defendants and Defendants'
successors, assigns, officers, agents, servants, salespersons,
employees, independent contractors, attorneys, and those persons in
active concert or participation with them, whether acting directly

1   or through any sole proprietorship, partnership, limited liability

2   company, corporation, subsidiary, branch, division, or other

3   entity, who receive actual notice of this Order by personal service

4   or otherwise, in connection with the advertising, labeling,

5   manufacturing, promoting, offering for sale, or sale of TruGenix

6   Hoodia, Ultralife PM, Pure Health Laboratories Hoodia, UltraBurn PM

7   (with Hoodia), or any dietary supplement, food, or non-prescription

8   drug or device, are hereby permanently restrained and enjoined from

9   making any representation, expressly or by implication, including

10  through the use of endorsements or product names, that such

11  product:

12      A.  Causes substantial weight loss with no additional effort,

13  including, but not limited to, reducing caloric intake or

14  increasing physical activity; or

15      B.  Causes permanent weight loss.

16  **VIII.   REPRESENTATIONS PROHIBITED UNLESS TRUE AND SUBSTANTIATED**

17      **IT IS FURTHER ORDERED** that Defendants and Defendants'

18  successors, assigns, officers, agents, servants, salespersons,

19  employees, independent contractors, attorneys, and those persons in

20  active concert or participation with them, whether acting directly

21  or through any sole proprietorship, partnership, limited liability

22  company, corporation, subsidiary, branch, division, or other

23  entity, who receive actual notice of this Order by personal service

24  or otherwise, in connection with the advertising, labeling,

25  manufacturing, promoting, offering for sale, or sale of any dietary

26  supplement, food, drug, device, or health-related program or

27  service, are hereby permanently restrained and enjoined from making

28

1   any representation, expressly or by implication, including through

2   the use of endorsements or product names:

3       A.   That any such product, service, or program:

4           1.   causes weight loss;

5           2.   causes weight loss with no additional effort,

6           including, but not limited to, reducing caloric intake or

7           increasing physical activity;

8           3.   causes users to lose any specified amount of weight

9           within a particular time frame;

10          4.   reduces or eliminates fat;

11          5.   reduces or curbs appetite;

12          6.   increases metabolism; or

13          7.   causes permanent weight loss; or

14      B.   Regarding the health benefits, performance, efficacy,

15      safety, or side effects of any such product, service, or

16      program;

17

18  unless, the representation is true, not misleading, and, at the

19  time the representation is made, Defendants possess and rely upon

20  competent and reliable scientific evidence that substantiates the

21  representation.

22                    **IX.   FDA APPROVED CLAIMS**

23      **IT IS FURTHER ORDERED** that:

24      A.   Nothing in this order shall prohibit Defendants from

25  making any representation for any drug that is permitted in

26  labeling for such drug under any tentative final or final standard

27  promulgated by the Food and Drug Administration, or under any new

28  drug application approved by the Food and Drug Administration;

1    B.    Nothing in this order shall prohibit Defendants from

2  making any representation for any product that is specifically

3  permitted in labeling for such product by regulations promulgated

4  by the Food and Drug Administration pursuant to the Nutrition

5  Labeling and Education Act of 1990; and

6    C.    Nothing in this order shall prohibit Defendants from

7  making any representation for any device that is permitted in

8  labeling for such device under any new medical device application

9  approved by the Food and Drug Administration.

10                        **X.   MONETARY JUDGMENT**

11    **IT IS FURTHER ORDERED** that judgment for equitable monetary

12  relief in favor of the Federal Trade Commission against Defendants,

13  jointly and severally, is hereby entered in the amount of nine

14  million nine hundred six thousand four hundred seventy-six dollars

15  ($9,906,476), which is the amount of consumer injury that the

16  Federal Trade Commission alleges was caused by Defendants.

17  However, this judgment shall be suspended, subject to the

18  provisions of Section XI, upon the completed payments identified in

19  Subsections X.A, X.B, X.C, and X.D:

20    A.   Defendant Neil P. Wardle shall pay fifty thousand dollars

21  ($50,000) to the Commission.  Upon Neil P. Wardle's execution of

22  this Order he shall deposit twenty-five thousand dollars ($25,000)

23  into an escrow account held by attorney Kenneth R. Ivory.  Within

24  five (5) days after entry of this Order by the Court, the first

25  twenty-five thousand dollar ($25,000) installment shall be paid to

26  the Commission.  Within ninety (90) days after entry of this Order

27  by the Court, Neil P. Wardle shall pay a second twenty-five

28  thousand dollar ($25,000) installment to the Commission.

1    B.   Defendant Pace Mannion shall pay fifty thousand dollars

2    ($50,000) to the Commission.   Upon Pace Mannion's execution of this

3    Order he shall deposit fifty thousand dollars ($50,000) into an

4    escrow account held by attorney Kenneth R. Ivory.   Within five (5)

5    days after entry of this Order by the Court the fifty thousand

6    dollars ($50,000) shall be paid to the Commission;

7    C.   Defendant Christopher J. Wardle shall pay fifty thousand

8    dollars ($50,000) to the Commission.   Upon Christopher J. Wardle's

9    execution of this Order he shall deposit twenty-five thousand

10   dollars ($25,000) into an escrow account held by attorney Kenneth

11   R. Ivory.   Within five (5) days after entry of this Order by the

12   Court, the first twenty-five thousand dollar ($25,000) installment

13   shall be paid to the Commission.   Within ninety (90) days after

14   entry of this Order by the Court, Christopher J. Wardle shall pay a

15   second twenty-five thousand dollar ($25,000) installment to the

16   Commission;

17   D.   After Neil P. Wardle and Pace Mannion make the payments to

18   the Commission required by Subsections X.A and X.B, but no later

19   than two hundred seventy (270) days after entry of this Order by

20   the Court, Neil P. Wardle shall transfer to the Internal Revenue

21   Service one hundred two thousand nine hundred twenty-eight dollars

22   ($102,928), and Defendant Pace Mannion shall transfer to the

23   Internal Revenue Service one hundred thousand eight hundred forty-

24   seven dollars ($100,847) as payment for each Defendant's federal

25   income tax liability for the 2006 tax year.   Within five (5) days

26   of such payments, Neil P. Wardle and Pace Mannion shall provide

27   proof of the payments to the FTC.

28

1    E.   If, on the two hundred seventy-first (271st) day after

2  entry of this Order by the Court, Defendant Neil P. Wardle has not

3  made the full payment to the IRS described in Subsection X.D, he

4  shall pay the amount of such nonpayment or underpayment, along with

5  the amount of any interest or credit he receives on account of such

6  nonpayment or underpayment, to the FTC within two hundred eighty-

7  five (285) days after entry of this Order;

8    F.   If, on the two hundred seventy-first (271st) day after

9  entry of this Order by the Court, Defendant Pace Mannion has not

10  made the full payment to the IRS described in Subsection X.D, he

11  shall pay the amount of such nonpayment or underpayment, along with

12  the amount of any interest or credit he receives on account of such

13  nonpayment or underpayment, to the FTC within two hundred eighty-

14  five (285) days after entry of this Order;

15    G.   If Defendant Neil P. Wardle or Defendant Pace Mannion fail

16  to pay the amounts each is required to pay pursuant to Subsections

17  X.E and X.F, then judgment in the amount of nine million nine

18  hundred six thousand four hundred seventy-six dollars ($9,906,476)

19  shall be entered and will become immediately due and payable, less

20  any amounts already paid, against that defaulting Defendant.

21  Provided however, that such defaulting Defendant shall have a

22  fourteen (14) day period within which to cure his default.

23    H.   Defendants shall pay all amounts due to the FTC under this

24  Order in cash by electronic funds transfer to the Commission, or to

25  such agent as the Commission may direct, pursuant to instructions

26  provided by the Commission.  Defendants' payments to the FTC

27  totaling one hundred fifty thousand dollars ($150,000) shall be

28  made notwithstanding that Defendants have made no admission of

liability and the Court has made no such finding in connection with this Order;

I.    All funds paid pursuant to this Section shall be deposited into a fund administered by the Commission or its agent to be used for equitable relief, including but not limited to restitution to consumers and any attendant expenses for the administration of such equitable relief.   In the event that direct restitution to consumers is wholly or partially impracticable or funds remain after restitution is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices as alleged in the Complaint.   Any funds not used for such equitable relief will be deposited with the United States Treasury as disgorgement.   Defendants shall have no right to challenge the Commission's choice of remedies under this Section. Defendants shall have no right to contest the manner of distribution chosen by the Commission.   No portion of any payment under the judgment herein shall be deemed a payment of any fine, penalty, or punitive assessment;

J.    Defendants acknowledge and agree that all money paid pursuant to this Order is irrevocably paid to the Commission for purposes of settlement between the parties, and Defendants shall make no claim or demand for return of the funds, directly or indirectly, through counsel or otherwise, and in the event of bankruptcy of any Defendant, such Defendant acknowledges that the funds are not part of the debtor's estate, nor does the estate have any claim or interest therein;

1    K.   Defendants shall provide the Commission, or its agent,

2  within thirty (30) days of such a request, the name, last known

3  address, telephone number, e-mail address, date of purchase, total

4  amount paid to Defendants, amount of any full or partial refund,

5  and the complete file record, including computer records and

6  correspondence for each consumer who paid Defendants or any entity

7  owned or controlled, in full or in part, by Defendants, for dietary

8  supplements, fitness programs, exercise devices, or other products

9  or services marketed or sold by Defendants from February 2005

10  through the date of entry of this Order, and any further

11  information the Commission deems necessary to effectuate any

12  restitution program for consumers;

13    L.   Unless already done so, each Defendant is hereby required,

14  in accordance with 31 U.S.C. § 7701, to furnish to the Commission

15  their respective taxpayer identifying numbers (social security

16  numbers or employer identification numbers), which will be used for

17  purposes of collecting and reporting on any delinquent amount

18  arising out of such Defendant's relationship with the government;

19    M.   Any Redress Administrator shall destroy all records

20  relating to the distribution of this judgment six (6) years after

21  the last of the funds are credited, delivered to the Commission, or

22  delivered to the FTC Treasury account, provided that no records

23  shall be destroyed unless and until a representative of the

24  Commission has received and approved the final accounting report

25  pertaining to Defendants' payment.   Records shall be destroyed in

26  accordance with disposal methods and procedures to be specified by

27  the Commission.   The Commission may, in its sole discretion,

28

1  require that such records, in whole or in part, be transferred, in

2  lieu of destruction, to the Commission;

3       N.   Pursuant to Section 604(1) of the Fair Credit Reporting

4  Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may

5  furnish a consumer report concerning any Defendant to the FTC,

6  which shall be used for purposes of collecting and reporting on any

7  delinquent amount arising out of this Order.

8                   **XI.   RELIANCE ON DISCLOSURES**

9       **IT IS FURTHER ORDERED** that:

10      A.   The Commission's agreement to this Order is expressly

11  premised upon the truthfulness, accuracy, and completeness of the

12  individual and corporate financial statements and other documents

13  and information provided by Defendants as identified in the

14  February 20, 2008 letter from defense counsel Kenneth Ivory to

15  Commission counsel Raymond E. McKown.  Such data constitute

16  material information relied upon by the Commission in negotiating

17  and agreeing to the terms of this Order;

18      B.   If, upon motion by the Commission, this Court finds that a

19  Defendant has (1) failed to disclose any material asset,

20  materially, misrepresented the value of any asset, or made any

21  other material misrepresentation in or omission from the submitted

22  financial statements, documents, or information identified in the

23  February 20, 2008 letter from defense counsel Kenneth Ivory to

24  Commission counsel Raymond E. McKown, or (2) failed to make timely

25  payment pursuant to Subsections X.A, X.B, or X.C, then, as to that

26  Defendant, judgment in the amount of nine million nine hundred six

27  thousand four hundred seventy-six dollars ($9,906,476) shall be

28  entered and will become immediately due and payable, less any

1   amounts already paid; provided however, that in all other respects

2   this Order shall remain in full force and effect unless otherwise

3   modified by the Court;

4        C.   Any proceedings instituted under this Section XI are in

5   addition to, and not in lieu of, any other civil or criminal

6   remedies as may be provided by law, including any other proceedings

7   that the FTC may initiate to enforce this Order; and

8        D.   For purposes of Sections X and XI, and any subsequent

9   proceedings to enforce payment, the Defendants agree that the facts

10  as alleged in the Complaint filed in this action shall be taken as

11  true, without further proof, in any subsequent litigation filed by

12  or on behalf of the Commission to collect any unpaid amount or

13  otherwise enforce its rights pursuant to this Order, including a

14  non-dischargeability complaint filed in any bankruptcy case.

15  **XII.   PROHIBITION ON COLLECTION OF PAYMENTS AND DISCLOSURE OF**

16  **CUSTOMER INFORMATION**

17       **IT IS FURTHER ORDERED** that Defendants and Defendants'

18  successors, assigns, officers, agents, servants, salespersons,

19  employees, independent contractors, attorneys, and those persons in

20  active concert or participation with them, whether acting directly

21  or through any sole proprietorship, partnership, limited liability

22  company, corporation, subsidiary, branch, division, or other

23  entity, who receive actual notice of this Order by personal service

24  or otherwise, in connection with the advertising, promoting,

25  offering for sale, or sale of any dietary supplement or fitness

26  products, are hereby permanently restrained and enjoined from:

27       A.   Causing any withdrawal, assessment of a fee, or payments

28  to be made against any consumer account, or otherwise causing

1  collection of, or attempts to collect, payment, directly or

2  indirectly, from a consumer, for any order for any such product

3  offered or provided to consumers where the purported authorization

4  for such order occurred prior to the effective date of this Order;

5      B.  Selling, renting, leasing, transferring or otherwise

6  disclosing the name, address, birth date, telephone number, email

7  address, Social Security number, credit or debit card number, bank

8  account number, or other financial or identifying personal

9  information of any person from whom or about whom such information

10  was obtained in connection with activities alleged in the

11  Complaint; and

12      C.  Benefitting from or using the name, address, birth date,

13  telephone number, Social Security number, credit or debit card

14  number, bank account number, or other financial or identifying

15  personal information of any person from whom or about whom any

16  Defendant obtained such information in connection with activities

17  alleged in the Complaint;

18      Provided however, that such financial or identifying personal

19  information may be disclosed to a law enforcement agency or as

20  required by any law, regulation, or court order.

21                **XIII.  COMPLIANCE MONITORING**

22      **IT IS FURTHER ORDERED** that, for the purpose of monitoring and

23  investigating compliance with any provision of this Order:

24      A.  Within fifteen (15) days of receipt of written notice from

25  a representative of the Commission, Neil P. Wardle, Christopher J.

26  Wardle, Pace Mannion, Ultralife Fitness, Inc., and Tru Genix

27  Laboratories, LLC, shall submit additional written reports, sworn

28  to under penalty of perjury; produce documents for inspection and

copying; appear for deposition; and/or provide entry during normal business hours to any business location in such Defendant's possession or direct or indirect control, to inspect the business operation;

B.   In addition, the Commission is authorized to monitor compliance with this Order by all other lawful means, including but not limited to the following:

1.   obtaining discovery from any person, without further leave of Court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, and 45;

2.   posing as consumers and suppliers to Neil P. Wardle, Christopher J. Wardle, Pace Mannion, Ultralife Fitness, Inc., or Tru Genix Laboratories, LLC, Defendants' employees, or any other entity managed or controlled in whole or in part by Neil P. Wardle, Christopher J. Wardle, Pace Mannion, Ultralife Fitness, Inc., or Tru Genix Laboratories, LLC, without the necessity of identification or prior notice; and

C.   Neil P. Wardle, Christopher J. Wardle, Pace Mannion, Ultralife Fitness, Inc., and Tru Genix Laboratories, LLC, shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Order.   The person interviewed may have counsel present;

Provided however, that nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony, or information

relevant to unfair or deceptive acts or practices in or affecting

commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

### XIV.  COMPLIANCE REPORTING BY DEFENDANTS

**IT IS FURTHER ORDERED** that, in order that compliance with the

provisions of this Order may be monitored:

A.  For a period of five (5) years from the date of entry of

this Order,

1.  Neil P. Wardle, Christopher J. Wardle, and Pace

Mannion shall notify the Commission of the following:

a.  any changes in residence, mailing addresses, and

telephone numbers of said Defendants, within ten (10) days of the

date of such change;

b.  any changes in employment status (including

self-employment) of Neil P. Wardle, Christopher J. Wardle, or Pace

Mannion, and any change in the ownership interest of Neil P.

Wardle, Christopher J. Wardle, or Pace Mannion, in any business

entity, within ten (10) days of the date of such change.  Such

notice shall include the name and address of each business that

such Defendant is affiliated with, employed by, creates or forms,

or performs services for; a statement of the nature of the

business; and a statement of said Defendant's duties and

responsibilities in connection with the business or employment; and

c.  any change in Neil P. Wardle, Christopher J.

Wardle, or Pace Mannion's name or use of any aliases or fictitious

names;

2.  Neil P. Wardle, Christopher J. Wardle, Pace Mannion,

Ultralife Fitness, Inc., and Tru Genix Laboratories, LLC, shall

notify the Commission of any changes in the corporate structure of

any Business Entity Defendant or of any company or organization
that Neil P. Wardle, Christopher J. Wardle, or Pace Mannion
directly or indirectly controls, or has an ownership interest in,
that may affect compliance obligations arising under this Order,
including but not limited to a dissolution, assignment, sale,
merger, or other action that would result in the emergence of a
successor entity; the creation or dissolution of a subsidiary,
parent, or affiliate that engages in any acts or practices that are
subject to this Order; the filing of a bankruptcy petition; or a
change in the corporate name or address, at least thirty (30) days
prior to such change, provided that, with respect to any proposed
change in the corporation about which Defendants learn of less than
thirty (30) days prior to the date such action is to take place,
Defendants shall notify the Commission as soon as is practicable
after obtaining such knowledge;

B.   One hundred eighty (180) days after the date of entry of
this Order, Neil P. Wardle, Christopher J. Wardle, Pace Mannion,
Ultralife Fitness, Inc., and Tru Genix Laboratories, LLC, each
shall provide a written report to the FTC, sworn to under penalty
of perjury, setting forth in detail the manner and form in which
they have complied and are complying with this Order.   This report
shall include, but not be limited to:

1.   for Neil P. Wardle, Christopher J. Wardle, and Pace
Mannion:

a.   their then-current residence address, mailing
addresses, and telephone numbers;

b.   their then-current employment and business
addresses and telephone numbers, a description of the business

1  activities of each such employer or business, and the title and

2  responsibilities of said Individual Defendants for each such

3  employer or business; and

4          c.  any other changes required to be reported under

5  subparagraph A of this Section XIV;

6          2.  for all Defendants:

7          a.  a copy of each acknowledgment of receipt of this

8  Order obtained pursuant to Section XVI;

9          b.  written expressions of consumers' consent

10 required by Section XII.A; and

11         c.  any other changes required to be reported under

12 subparagraph A of this Section XIV;

13 C.  For the purposes of this Order, Defendants shall, unless

14 otherwise directed by the Commission's authorized representatives,

15 mail all written notifications to the Commission to:

16         Associate Director, Division of Enforcement
           Federal Trade Commission
17         601 New Jersey Avenue, N. W.
           Washington, D.C. 20580
18         RE:  <u>FTC v.  Ultralife Fitness et al.</u>

19 D.  For purposes of the compliance reporting and monitoring

20 required by this Order, the Commission is authorized to communicate

21 directly with Defendants.

22                    **XV.   RECORD KEEPING**

23    **IT IS FURTHER ORDERED** that, for a period of eight (8) years

24 from the date of entry of this Order, in connection with any

25 business where Neil P. Wardle, Christopher J. Wardle, Pace Mannion,

26 Ultralife Fitness, Inc., or Tru Genix Laboratories, LLC, is the

27 majority owner of the business or directly or indirectly manages or

28 controls the business, each Defendant and its agents, employees,

officers, corporations, successors, and assigns, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from failing to create and retain the following records:

A.   Accounting records that reflect the cost of products or services sold, revenues generated, and the disbursement of such revenues;

B.   Personnel records accurately reflecting: the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C.   Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

D.   Complaint and refund requests (whether received directly, indirectly or through any third party) and any responses to those complaints or requests;

E.   Copies of all sales scripts, training materials, advertisements, or other marketing materials;

F.   Each tape recording of a telemarketing call made pursuant to Section III.A.2, above; and

G.   All records and documents necessary to demonstrate full compliance with each provision of this Order, including but not

limited to, copies of all procedures for receiving and responding to consumer complaints, all documents relating to investigations of consumer complaints, all documents demonstrating how Defendants responded to or addressed each consumer complaint as required by Section IV, all documents evidencing whether refunds were provided as required by Section V.B, all acknowledgments of receipt of this Order as required by Sections XVI and XVII, all reports submitted to the FTC pursuant to Section XIV, and all written expressions of consumers' consent as required by Sections III.A.1 and XII.A.

**XVI.   DISTRIBUTION OF ORDER BY DEFENDANTS**

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order, Defendants shall deliver copies of this Order as directed below:

A.   Business Entity Defendants: Ultralife Fitness, Inc., and Tru Genix Laboratories, LLC, must deliver a copy of this Order to all of its principals, officers, directors, and managers.  Each Business Entity Defendant also must deliver a copy of this Order to all of its employees, agents, and representatives who engage in conduct related to the subject matter of this Order.  For current personnel, delivery shall be within five (5) days of service of this Order upon Defendants.  For new personnel, delivery shall occur prior to them assuming their responsibilities;

B.   Individual Defendants as control person: For any business that Neil P. Wardle, Christopher J. Wardle, or Pace Mannion controls, directly or indirectly, or in which any Individual Defendant has a majority ownership interest, such Individual Defendant must deliver a copy of this Order to all principals, officers, directors, and managers of that business.  Said

Individual Defendants must also deliver copies of this Order to all employees, agents, and representatives of that business who engage in conduct related to the subject matter of this Order.  For current personnel, delivery shall be within five (5) days of service of this Order upon Defendants.  For new personnel, delivery shall occur prior to them assuming their responsibilities;

C.  Neil P. Wardle, Christopher J. Wardle, or Pace Mannion as employee or non-control person:  For any business where such Individual Defendant is not a controlling person of a business but otherwise engages in conduct related to the subject matter of this Order, the Individual Defendant must deliver a copy of this Order to all principals and managers of such business before engaging in such conduct; and

D.  Neil P. Wardle, Christopher J. Wardle, Pace Mannion, Ultralife Fitness, Inc., and Tru Genix Laboratories, LLC, must secure a signed and dated statement acknowledging receipt of this Order, within thirty (30) days of delivery, from all persons receiving a copy of the Order pursuant to this Section.

**XVII.  ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANTS**

**IT IS FURTHER ORDERED** that each Defendant and Relief Defendant, within five (5) business days of receipt of this Order as entered by the Court, must submit to the Commission a truthful sworn statement acknowledging receipt of this Order.  An example of such a form is provided as Attachment A.

**XVIII.  COSTS AND ATTORNEYS' FEES**

**IT IS FURTHER ORDERED** that each party shall bear its own costs and attorneys' fees incurred in connection with this action.

1

**XIX.   RETENTION OF JURISDICTION**

2      **IT IS FURTHER ORDERED** that this Court shall retain

3 jurisdiction of this matter for purposes of construction,

4 modification, and enforcement of this Order.

5

6

7      **IT IS SO ORDERED.**

8

9

Date: 12/5/08

10                                     _____
                                       Honorable Dale S. Fischer

11                                     United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT A

UNITED STATES DISTRICT COURT

_____ DISTRICT OF _____

_____   )
                                                 )
                                                 )
FEDERAL TRADE COMMISSION,                        )        CIVIL ACTION NO.
                                                 )
                          Plaintiff,             )
                                                 )
                                                 )        AFFIDAVIT  OF
      v.                                         )        DEFENDANT --------
                                                 )        ACKNOWLEDGING RECEIPT OF
DEFENDANT, et al.                                )        ORDER
                                                 )
                          Defendants.            )
_____   )

     [*Name of defendant*], being duly sworn, hereby states and affirms as follows:

     1.      My name is_____.  My current residence address is
_____.  I am a citizen of the United
States and am over the age of eighteen.  I have personal knowledge of the facts set forth in this
Affidavit.
     2.      I am a defendant in <u>FTC v. Defendant, et al.</u> (United States District Court for the
_____ District of _____).
     3.      On [*date*], I received a copy of the [*state full name of the Final Order as it appears
on the Order itself*], which was signed by the Honorable [*name of U.S. District Judge*] and entered
by the Court on [*date of entry of Order*].

     I declare under penalty of perjury under the laws of the United States that the
foregoing is true and correct.  Executed on [*date*], at [*city and state*].


                                     _____
                                     [*Full name of defendant*]

State of _____, City of _____

     Subscribed and sworn to before me this _____ day of _____, 2005___.
     _____
     Notary Public
     My Commission Expires:

1   _____

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28